UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS R. LOTT,

        Petitioner,

                                 CASE NO. 03-CV-74234-DT

   v.                             JUDGE PAUL D. BORMAN
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

KENNETH T. McKEE,

        Respondent.[1]

_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Convictions* . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.   *Exhaustion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    E.   *Prosecutorial Misconduct Claims (Direct Appeal Claim I and Supplemental Claim III)* . . . . . . 12
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           a. Appeal to Civic Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           b. Alias Evidence and Prior Arrests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           c. Arguing Facts Not in Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
           d. Shifting of the Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
           e. Ordering of Proofs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    F.   *Improper Arraignment Claim (Direct Appeal Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    G.   *Jury Claims (Direct Appeal Claims IV & VI-VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.   *Defective Oath (Direct Appeal Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        2.   *Prejudicial Comments During Voir Dire (Direct Appeal Claim VII)* . . . . . . . . . . . 21
           a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
           b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        3.   *Instructional Error (Direct Appeal Claims VI and VIII)* . . . . . . . . . . . . . . . . . . . . . 24
           a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
           b. Misidentification Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
           c. Reasonable Doubt Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    H.   *Rebuttal Testimony Claim (Direct Appeal Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

[1]By Order entered this date, Kenneth T. McKee has been substituted for Doug C. Vasbinder as the proper respondent in this action.

      2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
I.    *Ineffective Assistance of Counsel Claims (Supplemental Claim II, Habeas Claims I & II, and Amended*
      *Habeas Claim)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
      1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
      2.      *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
      3.      *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
J.    *Sentencing Claims (Direct Appeal Claim II and Supplemental Claim I)* . . . . . . . . . . . . . . . . . . . 35
      1.      *Vindictive Sentencing (Direct Appeal Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . 35
              a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
              b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
      2.      *Reliance on Uncounseled Convictions (Supplemental Claim I)* . . . . . . . . . . . . . . . 38
              a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
              b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
K.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*       *       *       *       *

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.   <u>REPORT</u>:

A.    *Procedural History*

      1.      Petitioner Carlos R. Lott is a state prisoner, currently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.

      2.      On October 26, 1999, petitioner was convicted of one count of carjacking, MICH. COMP. LAWS § 750.529a; and three counts of armed robbery, MICH. COMP. LAWS § 750.529(1), following a jury trial in the Wayne County Circuit Court. On November 19, 1999, he was sentenced to four concurrent terms of 15-30 years' imprisonment.

      3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

      I.      PROSECUTORIAL MISCONDUCT DENIED DEFENDANT'S STATE
              AND FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR TRIAL.

              A.      The prosecutor characterized defendant's conduct as exemplifying
                      "the law of the jungle" and told the jurors, "you have to stop the

2

violence." These inflammatory comments constituted an improper and prejudicial appeal to civic duty which denied defendant's right to a fair trial.

B.      The prosecutor injected the innuendo that defendant had supposedly used various aliases. This was more prejudicial than probative, and denied defendant's federal and state due-process rights to a fair trial.

C.      The prosecutor's inflammatory cross-examination insinuating defendant's record of prior arrests for unspecified crimes was so prejudicial that it denied defendant the due-process right to a fair trial as guaranteed by the federal and state constitutions.

D.      Complainant Hussein Sobh testified as to being robbed of a cell phone and other property. A cell phone was seized from the vehicle when defendant was arrested. There was no evidence that this was the complainant's phone. The prosecutor asserted that the seized phone belonged to Sobh, and argued that this was proof of defendant's guilt. The prosecutor improperly argued facts beyond the trial record, and denied defendant his due-process right to a fair trial.

E.      The prosecutor improperly shifted the burden of proof.

F.      After defendant testified that he was an innocent man mistakenly identified, the prosecutor prejudicially bolstered complainant Ali Kaddouh, and engaged in unfair ordering of the proofs, by recalling Kaddouh, to reiterate that his identification of defendant was positive, "one hundred percent," and that if he was unsure he would have said so.

G.      Pervasive prosecutorial misconduct resulted in *Brecht v. Abrahamson* "footnote nine" or "hybrid" structural/trial error which requires reversal without the need to show prejudice.

H.      Even if the prosecutorial misconduct was not hybrid error, reversal is required because the error prejudiced defendant's defense.

I.      This prosecutorial misconduct denied defendant his right to a fair trial as guaranteed by the State Constitution and the Fourteenth Amendment.

II.      DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS GIVEN A SENTENCE FAR EXCEEDING HIS *COBBS* EVALUATION SENTENCE, WHICH LEFT THE APPEARANCE OF VINDICTIVENESS

3

FOR EXERCISING HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL.

III.   DEFENDANT WAS DENIED PROCEDURAL DUE PROCESS WHEN HE WAS CONVICTED DESPITE NEVER HAVING BEEN PROPERLY ARRAIGNED ON THE INFORMATION.

IV.   THE CLERK ADMINISTERED A DEFECTIVE OATH TO THE JURORS AT DEFENDANT'S TRIAL, WHICH DENIED DUE PROCESS OF LAW, INFRINGED ON DEFENDANT'S RIGHT TO TRIAL BY JURY, AND CONSTITUTED STRUCTURAL ERROR REQUIRING AUTOMATIC REVERSAL OF DEFENDANT'S CONVICTION.

   A.   The oath administered by the court clerk to the jury did not comport with the governing court rule.

   B.   Defendant did not knowingly and intentionally waive his right to a properly sworn jury.

   C.   Because the absence of a proper oath strikes at the integrity of the trial itself, the error must be deemed a structural error requiring automatic reversal of defendant's convictions.

V.   IT WAS PLAIN ERROR AND A DENIAL OF DUE PROCESS FOR THE TRIAL COURT TO ALLOW COMPLAINANT KADDOUH TO REITERATE HIS PREVIOUS TESTIMONY THAT HE WAS "ONE HUNDRED PERCENT" CERTAIN THAT DEFENDANT HAD ROBBED HIM.

VI.   THE TRIAL COURT PLAINLY ERRED AND DENIED DUE PROCESS IN FAILING TO GIVE A *FRANKLIN ANDERSON* CAUTIONARY INSTRUCTION ON THE GRAVE DANGERS OF MISIDENTIFICATION.

VII.   THE CUMULATIVE EFFECT OF REPEATED JUROR COMMENTS ABOUT BEING VICTIMS OF VIOLENT CRIMES TAINTED THE ENTIRE PANEL AND PRECLUDED A FAIR TRIAL.

VIII.   THE TRIAL COURT PLAINLY ERRED IN INSTRUCTING THE JURY ON REASONABLE DOUBT.

   A.   The revised reasonable-doubt instruction erroneously fails to instruct that to convict, jurors must be morally certain of guilt.

   B.   The revised reasonable-doubt instruction erroneously fails to instruct that a reasonable doubt is such a doubt as would cause a reasonable

4

and prudent person to hesitate before acting on the evidence in important matters in the juror's own life.

IX.   CUMULATIVE ERROR DENIED DUE PROCESS AND REQUIRES A NEW TRIAL.

Petitioner thereafter filed a *pro se* supplemental brief on appeal, raising three additional claims for relief:

I.    DEFENDANT WAS IMPROPERLY SENTENCED WHERE THE SENTENCING JUDGE RELIED ON TWO INVALID CONVICTIONS IN IMPOSING SENTENCE, WHERE TWO PRIOR CONVICTIONS WERE OBTAINED IN VIOLATION OF THE RIGHT TO COUNSEL.

II.   INEFFECTIVE ASSISTANCE OF COUNSEL DENIED DEFENDANT'S RIGHTS TO A FAIR TRIAL.

III.  PROSECUTORIAL MISCONDUCT DENIED DEFENDANT'S STATE AND FEDERAL RIGHTS TO A FAIR TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Lott*, No. 224944, 2002 WL 31082165 (Mich. Ct. App. Sept. 17, 2002) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  Petitioner also sought leave to raise one additional claim, asserting ineffective assistance of appellate counsel.  The Supreme Court granted petitioner's motion for leave to add the additional claim, and denied his application for leave to appeal in a standard order.  *See People v. Lott*, 468 Mich. 910, 662 N.W.2d 747 (2003).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 22, 2003.  In his form petition, he raises two grounds for relief: ineffective assistance of trial counsel and ineffective assistance of appellate counsel.  However, petitioner also attached to his habeas petition the state appellate court briefs, and asserts in his reply that he intended to raise

each of the claims raised in the state courts.[2]

6. Respondent filed his answer on April 26, 2004, addressing only the two claims raised in petitioner's form application. Respondent contends that petitioner's claims are unexhausted and without merit.

7. Petitioner filed a reply to respondent's answer on October 20, 2004. Petitioner also filed a motion for leave to amend the petition to add an additional claim of ineffective assistance of counsel. By order entered this date, I have granted petitioner's motion to amend.

B.   *Factual Background Underlying Petitioner's Convictions*

The factual background and trial evidence leading to petitioner's convictions was accurately set forth in petitioner's brief on appeal to the Michigan Court of Appeals:

> At the jury trial of defendant Carlos Lott, prosecution witness Ali Kaddouh testified that on May 13, 1999, he was the front-seat passenger in the Chevrolet Blazer driven by his friend Hussein Sobh. Matthew Osman was the rear-seat passenger. The vehicle was traveling down Tireman street in Detroit when two men walking across the street stopped in front of the vehicle. One man came to the driver's side and pointed a small, black object that "looked like a gun" to Hussein Sobh's head. (T, 64-65, 68-69; 10/25/99). The second man, who stood in front of the vehicle, came to the passenger side, ordered Kaddouh out, took his pager, phone, and money, and got in the front passenger seat. Kaddouh wasn't really paying attention to his face because he was "scared, nervous," but said he got a "good glimpse" of his face "real fast" when the man's head was down as he was checking for Kaddouh's money. He identified this man as Carlos Lott. Kaddouh "wasn't sure" that this second man was armed, but he "wasn't going to do nothing stupid to jeopardize" himself or his friends. He let the man pat him down, and gave him his

---

[2]Because a *pro se* habeas petitioner's application should be liberally construed, and because petitioner explicitly incorporated his state court briefs in his habeas petition, the Court should conclude that these claims are properly before the Court. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 717 n.2 (E.D. Mich. 2002) (Gadola, J.); *cf. Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

For sake of simplicity, I refer to the claims throughout this Report by the brief in which it is presented. Thus, the first claim in petitioner's direct appeal brief is "Direct Appeal Claim I," the first claim in his *pro per* supplemental brief is "Supplemental Claim I," and the first claim set forth in the form petition is "Habeas Claim I."

cell phone and pager because "I was threatened. I thought he did have a weapon, because I just thought maybe if I did something stupid, he will use it. So I decided to give him all my stuff." (T, 65-68; 10/25/99). At some point, Kaddouh realized there was also a third man with the other two. The three men all got into the vehicle, and left the scene; the man with the gun was in the driver's seat, and the man he claimed was Carlos Lott was in the front passenger seat. Kaddouh identified defendant Carlos Lott in a lineup the next day. (T, 70-72; 10/25/99). At trial, he was "positive" that Carlos Lott was the person who took his possessions. (T, 71; 10/25/99). Kaddouh said he gave up his property

> Because as soon as I seen the gun to my friend's head, I didn't want to put my life in jeopardy. I let them take my stuff without even questioning. I'm not going to put my friend's life in danger, because I was stupid or because I want to held on to my cell phone, or a hundred fifty dollars. (T, 72; 10/25/99).

Kaddouh admitted he had told the police that the person who robbed him as a black male, 19 to 20, 5'9", 180 pounds, stocky build, with a dark complexion, wearing dark clothing and possibly some red in his shirt. (T, 74-75; 10/25/99). He admitted this description did not fit Mr. Lott, whose lineup description was 5'7", 150 pounds. Kaddouh said "I might have not given the same description, but I recognize the face." He also admitted he said nothing about facial hair in his original description, but at the lineup Mr. Lott had a thin mustache and goatee. (T, 76; 10/25/99). Kaddouh could recall no jewelry or distinguishing marks on his assailant's hands. (T, 80; 10/25/99).

Kaddouh's cell phone was "a black Startack" fold-up phone. Kaddouh said he "briefly" looked up to the assailant's face. It was night, but there was a street light at the corner, although he could not say how far away. He said one of the persons stayed in front of the car, and another person went to the driver's side. He was sure that the man at the driver's side did not go over to the passenger side again. He was also sure the "front person" did not move to the driver's side. (T, 77-79; 10/25/99).

Hussein Sobh, the driver of the Blazer, said that at about 11:15 p.m., two people walked across Tireman in front of his vehicle, and he slowed down and then came to a stop when one man stood in the middle of the street. The other man walked to his window, and pointed a gun to his head, took the keys, and took Sobh's necklace and cell phone. (T, 81-82; 10/25/99). He ordered Sobh out of the car; Sobh complied. Sobh said he "didn't really see" the gun: "It was pointed to my head. I felt it." Sobh lost the vehicle, a cell phone, a gold necklace, and about $18 or $11. A third man came out of somewhere to join the other two assailants. Sobh said he "didn't get a picture of their faces." (T, 82-84; 10/25/99).

Sobh surrendered his property and money because there was a gun at his head. Then the three men left in the vehicle. He could identify the man with the gun, but not the second man who stood in front of the vehicle. He never identified

7

Mr. Lott as being on the scene.  He described the man in front of the car as short.  He told  the police the man was "light complected" (sic).  On redirect, Sobh said the cell phone taken from him was a Nokia 6162.  (T, 84-86, 88; 10/25/99).  On recross, he acknowledged it was not Mr. Lott who took his property from him.  He described the gunman as about 6'4" tall, with bush hair and a "light complexion," with a slim build, "not really heavy."  (T, 89; 10/25/99).

Police Lt. Denise Jaeger testified to being on patrol in an unmarked car, looking for the stolen green Blazer.  (T, 90-91; 10/25/99).  After spotting a green Blazer and making a U-turn to follow it, the Blazer sped off down side-streets.  During the chase, Lt. Jaeger verified the plates on the stolen vehicle.  After a 6 or 7-block pursuit at fairly high speed, the driver lost control and jumped out of the Blazer.  He was a tall, thin black male, over 6' tall.  The passenger attempted to jump out.  When the passenger side struck a fence post, the passenger was stuck with his legs out of the car and the car door up against him.  Lt. Jaeger took the trapped suspect into custody, and identified him as Carlos Lott.  The stop took place about midnight.  Inside the Blazer was a Nokia cell phone and a Pelle leather jacket.  The Blazer contained no money, no other cell phones, no pagers, no gold necklace, no silver necklace, and no other jewelry.  (T, 91-95; 10/25/99).

Complainant Matthew Osman, the rear-seat passenger, said two men came in front of the Blazer.  The gunman went to the driver's side, ordered Sobh out, and took his property.  The gun scared Osman.  The person in front of the car came to the passenger side and took Ali Kaddouh's property.  A third man came to Osman's door and took his money and silver necklace.  The three assailants took the car and left.  Osman said the person who robbed Kaddouh was Carlos Lott.  (T, 98-100; 10/25/99).  Osman identified Mr. Lott in a lineup as the one who took his (Osman's) necklace, but at trial he said he was mistaken:

> The one that during the lineup, I thought it was one that actually took my necklace, which it wasn't.  It was the one that car-jacked obviously, or took his stuff.  I'm sorry.

He claimed he recognized Mr. Lott as being in the car doing the car-jacking but that he was not the one who took Osman's property.  He explained: "At first I thought it was him, because I recognized him so well, but it wasn't him."  The lineup was about 20 hours after the incident.  (T, 102-103; 10/25/99).  Osman said he gave up his property because "I feared for my life.  I figured if one had pulled a gun on Hussein, I figure this guy may have a gun, too."  He admitted that the only gun he saw that night was held by the man on the driver's side.  (T, 103; 10/25/99).  Osman admitted that in his statement to the police he described Number 2, the man he alleged was Mr. Lott, as being a black male, 19 to 20, 5'8", medium build, medium complexion, with no other description.  (T, 104; 10/25/99).

Officer Ester Lightfoot testified that at the lineup, Matthew Osman identified Mr. Lott as being the guy who took his chain; in other words, according to Osman, Mr. Lott robbed two people that night.  (T, 114; 10/25/99).  Officer Derek Owens

testified to arresting the driver of the Blazer, describing him as over six feet tall, with a thin build and bushy hair. (T, 116; 10/25/99). It was stipulated that two latent fingerprints of Mr. Lott were found on the outside passenger door window trim. (T, 119; 10/25/99).

Carlos Lott testified that he had been at a friend's residence where he met a man who offered Mr. Lott and his friend Anthony Tyner a ride. As they were riding in the green Blazer, the driver crashed the car. He blacked out momentarily. Arriving police officers removed him from the truck, and arrested him. He denied trying to run away. He was taken to the hospital and treated for a minor concussion, then jailed. (T, 121-127; 10/25/99).

Mr. Lott recalled seeing someone in the Blazer, either the driver or the driver's friend, using a phone, but other than that he had not see any cell phone, pagers, or gold or silver jewelry in the Blazer. He flatly denied having participated in the carjacking and robbery described by the complainants. (T, 127-129; 10/25/99). On cross-examination, the prosecutor repeatedly insinuated that Mr. Lott has used various aliases, and elicited proof of prior arrests. (T, 129-130; 10/25/99).

Def.'s Br. on App., in *People v. Lott*, No. 224944 (Mich. Ct. App.), at 1-4.

C.    *Exhaustion*

Respondent contends that petitioner's claims are unexhausted. A habeas petitioner must exhaust his state law remedies before seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. *See Picard v. Connor*, 404 U.S. 270, 275-278 (1971). "A petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993). In general, a petitioner has satisfied the exhaustion requirement when she has presented her claim to the state's highest court. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). If a petition contains both exhausted and unexhausted claims, the general rule is to dismiss such mixed petitions for exhaustion of all claims. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982).

Regardless of whether petitioner exhausted each of his claims, however, the Court should nonetheless deny the petition on the merits. A petitioner's failure to exhaust state remedies does not

deprive a federal habeas court of its jurisdiction to consider the merits of the habeas petition.  *See Granberry v. Greer*, 481 U.S. 129, 131 (1987).  A federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review.  *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987).  In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims.  *See Cain*, 947 F.2d at 820.  Indeed, the habeas statute now explicitly states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure to exhaust the remedies available in the court of the State." 28 U.S.C. § 2254(b)(2).  Because, as discussed below, petitioner is not entitled to relief on any of his claims, the Court should dismiss the claims on the merits rather than require further review in the state courts.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

10

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

11

legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Prosecutorial Misconduct Claims (Direct Appeal Claim I and Supplemental Claim III)*

Petitioner first contends that the prosecutor committed misconduct in a number of respects, and that these instances of prosecutorial misconduct denied him due process of law. The Court should conclude that petitioner is not entitled to relief on these prosecutorial misconduct claims.

1.    *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation

12

omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused."  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).  In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial."  *Id.* (internal quotation omitted).[3]

2.     *Analysis*

a.  *Appeal to Civic Duty*

Petitioner first contends that the prosecutor committed misconduct by improperly appealing

---

[3]In his direct appeal brief petitioner argued, and presumably he argues here, that the prosecutorial misconduct in his case was so pronounced that the misconduct should be considered structural error and thus that he need not demonstrate that the remarks were prejudicial.  This argument is without merit.  The Supreme Court has recognized only a narrow class of "structural errors" for which harmless error review is inappropriate.  *See generally*, *Sullivan v. Louisiana*, 508 U.S. 275, 278-82 (1993); *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991).  As Chief Justice Rehnquist noted in *Sullivan*, "[t]here is a 'strong presumption' that any error will fall into the [trial error] categor[y].  Thus, it is the rare case in which a constitutional violation will not be subject to harmless-error analysis."  *Sullivan*, 508 U.S. at 282 (Rehnquist, C.J., concurring) (citation omitted).  The Supreme Court has limited its *per se* harmfulness approach to structural errors which pervade the entire proceeding, such as a biased judge or the complete denial of counsel.  Errors short of this type are subject to harmless error analysis, no matter the import of the constitutional right allegedly infringed.  *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 9-15 (1999) (omitting element of offense in instructing jury is subject to harmless error analysis); *Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999) (violation of right to confrontation subject to harmless error analysis).  Likewise, prosecutorial misconduct claims are considered trial error claims for which prejudice need be shown.  *See Maurino v. Johnson*, 210 F.3d 638, 647 (6th Cir. 2000), *abrogated on other grounds by Harris v. Stovall*, 212 F.3d 940, 942-43 (6th Cir. 2000); *Mahady v. Cason*, 367 F. Supp. 2d 1107, 1118 (E.D. Mich. 2005) (Cohn, J.).

to the jury's civic duty. During closing argument, the prosecutor asked the jury, "What is this case about? . . . Do we have the laws of justice here or do we have the laws of the jungle?" Trial Tr., Day 2, at 3. The prosecutor later told the jury that "[y]ou have to stop the violence." *Id.* at 6. Petitioner contends that these comments constitute improper appeals to civic duty.

The Michigan Court of Appeals correctly concluded that these remarks were improper appeals to civic duty. *See Lott*, 2002 WL 31082165, at *1, slip op. at 1. "Civic duty arguments improperly inject issues into the trial that are broader than defendant's guilt or innocence of the charges in an effort to encourage jurors to suspend their own powers of judgment." *Wilson v. Grant*, 877 F. Supp. 380, 388 (E.D. Mich. 1995). Nevertheless, the court of appeals was also reasonable in concluding that the comments did not amount to prejudicial misconduct. As the court of appeals reasoned, "the challenged remarks were brief and isolated and any prejudice was alleviated by the court's instruction to the jurors that they must not be influenced by sympathy or prejudice, and that the arguments and statements of the attorneys are not evidence." *Lott*, 2002 WL 31082165, at *1, slip op. at 1. In light of the brevity of the remarks and the court's instructions to the jury, this determination was reasonable. *See White v. Withrow*, No. 00-74231, 2001 WL 902624, at *10 (E.D. Mich. June 22, 2001) (Rosen, J.); *Cameron v. Pitcher*, No. 99-74906, 2001 WL 85893, at *10 (E.D. Mich. Jan. 4, 2001) (O'Meara, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Alias Evidence and Prior Arrests

Petitioner next contends that the prosecutor committed misconduct by questioning him regarding his prior use of aliases. *See* Trial Tr., Day 1, at 129-30. However, both the federal and Michigan courts have held that evidence of the use of aliases is permissible impeachment evidence

14

under Rule 608(b) of the Rules of Evidence because such evidence goes to a witness's veracity.  *See United States v. Gaines*, 105 Fed. Appx. 682, 695-96 (6th Cir. 2004), *vacated on other grounds*, 125 S. Ct. 1090 (2005); *United States v. Mansaw*, 714 F.2d 785, 789 (8th Cir. 1983); *People v. Messenger*, 212 Mich. App. 171, 180, 561 N.W.2d 463, 467-68 (1997); *People v. Bowens*, 119 Mich. App. 470, 471-72, 326 N.W.2d 406, 407-08 (1982).  Because this evidence was proper, the prosecutor did not commit misconduct by questioning petitioner regarding his prior use of aliases.

Nor was the prosecutor's questioning improper because it referred to his prior arrests.  The prosecutor did not question petitioner regarding the nature of the crimes for which petitioner had been arrested, nor did she elicit any other information regarding the circumstances of the arrests beyond questioning petitioner about his use of an alias.  Because that use of the evidence was proper, and because the prosecutor's questions did not stray beyond the narrow issue of petitioner's use of aliases, the prosecutor's questions were not improper.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Arguing Facts Not in Evidence

Petitioner next argues that the prosecutor impermissibly argued facts not in evidence.  During her opening statement, the prosecutor informed the jury that it would hear testimony from Ali Kaddouh, "who will tell you that Carlos Lott took, robbed him of $161, robbed him of a pager, robbed him of a cell phone."  Trial. Tr., Day 1, at 57.  During closing argument, the prosecutor recounted the circumstantial evidence, in particular the money found on petitioner at his arrest: "[T]he fact he has got $161 on him.  We know Mr. Kaddouh had $115.[4]  Mr. Sobh, somebody

---

[4]This is apparently a transcription error.  Rendered orally, "one hundred fifteen" and "one hundred fifty" are difficulty to distinguish, and $150 comports with the prosecutor's opening statement, Kaddouh's testimony, and the prosecutor's immediately following math (150 plus 11

talked about having anywhere from $11 to $18. Some circumstances, maybe the numbers don't add up, maybe it was 168, maybe $161, maybe the defendant spent $7, but we don't know. But it comes within the ballpark." Trial. Tr., Day 2, at 11-12. Petitioner contends that these statements did not comport with Kaddouh's testimony, and thus were improper. The Court should disagree.

Kaddouh testified at trial that he was robbed of both money and his pager. Specifically, Kaddouh testified that petitioner went to the passenger side of the car and "told me give me all your stuff, took my pager, my cell phone, money, and then got in the car." Trial Tr., Day 1, at 65. Thus, the prosecutor did not refer to any facts outside of the evidence presented at the trial, but rather relied on the facts actually set forth in Kaddouh's testimony. It is true that Kaddouh testified that petitioner took from him $150, while the prosecutor in her opening statement told the jury that petitioner had taken $161 from him, but this did not constitute misconduct. In the first place, Kaddouh did not definitively state that petitioner took an even $150 from him; Kaddouh's answer was in response to a question which asked for a ballpark figure. *See* Trial Tr., Day 1, at 65 (emphasis added) ("Q: *About* how much money did you lose? A: Hundred fifty dollars."). Second, the *de minimis* variance between the prosecutor's opening statement and the evidence at trial did not have an prejudicial effect, particularly in light of the court's instruction to the jury that the statements of counsel were not evidence. *See Frazier v. Cupp*, 394 U.S. 731, 736 (1969).

Petitioner also argues that the prosecutor argued facts not in evidence when she stated that the cell phone found in the front of the car after the police chase was Sobh's cell phone. *See* Trial Tr., Day 2, at 12. Although Sobh testified that he was robbed of a Nokia cell phone, *see* Trial Tr., Day 1, at 84, 88, and Lt. Jaeger testified that a Nokia cell phone was recovered from the vehicle after

---

to 18 equaling 161 to 168).

the crash, *see id.* at 95, petitioner contends that there was no evidence that the two phones were the same, such as testimony regarding the serial number of Sobh's phone and that of the phone recovered from the car.  It is well established, however, that a prosecutor may argue that the jury should draw permissible inferences from the evidence presented.  *See Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (same).  Given the short lapse of time and the circumstances of the crime, it was certainly reasonable for the prosecutor to argue, and for the jury to infer, that the Nokia cell phone found in the vehicle was the same phone that had been take from Sobh.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Shifting of the Burden of Proof

Petitioner next argues that the prosecutor impermissibly shifted the burden of proof by questioning him about the absence of corroboration to support his version of the events:

Q:     Now, is Que here today?
A:     No, ma'am.
Q:     Is he out in the hall?
A:     No, ma'am.
Q:     That would have been important to have Que here, wouldn't it?
A:     Yes, ma'am.
        * * * *
Q:     If Que were here, he could verify that you were at his house?
A:     Yes.
Q:     But you don't have Que here?
A:     No.
        * * * *
A:     [At the house was] my friend Anthony Tyner's friend, been knowing him for three days.  He stayed in the neighborhood.
Q:     He is not here?
A:     I don't know him.  That's my friend's friend who I was staying with.  That his friend.
Q:     Anthony Tyner is not here today, either?
A:     No, ma'am.
Q:     That would have been important to have him corroborate what you are

17

|   | saying? |
|---|---------|
| A: | Yes. |
| Q: | And Youngin, therefore, he's not here either, is he? |
| A: | No, ma'am. |
| Q: | He can corroborate what you're saying? |
| A: | Yes, ma'am. |
| Q: | So the only one that is here to tell this story is you, today? |
| A: | Yes, ma'am |
| Q: | You don't have anybody else to back you up, do you? |
| A: | No, ma'am. |

Trial Tr., Day 1, at 140-42.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

While it is true that a criminal defendant has no duty to testify or come forward with any evidence, once he does so a prosecutor is permitted to comment on that evidence.  Here, the prosecutor's questions and comments were merely "a proper way of arguing that the [petitioner's] argument was mere speculation unsupported by the evidence."  *United States v. MMR Corp.*, 907 F.2d 489, 502 (5th Cir. 1990).  "The state prosecutor was not suggesting to the jury that the petitioner was obligated to prove his innocence.  Rather, he was arguing that the petitioner's . . . testimony was unsupported and not worthy of belief.  Thus, the prosecutor's comments did not shift the burden of proof to the defense and did not violate the petitioner's constitutional rights."  *March v. Bock*, No. 00-CV-10495, 2003 WL 21488691, at *8 (E.D. Mich. June 12, 2003) (Lawson, J.).  Further, any ambiguity that the prosecutor's questions and argument may have created for the jury on the matter of the burden of proof was cured by the trial court's instructions on the proper burden of proof.  *See Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002); *Lugo v. Kuhlmann*, 68 F. Supp. 2d 347, 369 (S.D.N.Y. 1999).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*e.  Ordering of Proofs*

18

Finally, petitioner contends that the prosecutor committed misconduct by recalling Kaddouh as a rebuttal witness to buttress his earlier identification of petitioner as the man who robbed him. As explained more fully below in connection with petitioner's evidentiary claim based on this testimony, *see infra* part H.2, this evidence was neither inadmissible under state law nor prejudicial, and thus the prosecutor did not commit misconduct by recalling Kaddouh as a rebuttal witness. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Improper Arraignment Claim (Direct Appeal Claim III)*

Petitioner next claims that he was denied due process of law because he was not properly arraigned on the information.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner does not contend that he lacked notice of the charges against him, or that the information in his case was not sufficiently clear to either provide him with notice or provide a bar against double jeopardy.   Rather, he contends only that he was not properly arraigned on the information under state law.  This claim provides no basis for habeas relief.  In *Garland v. Washington*, 232 U.S. 642 (1914), the Supreme Court explained that the "want of formal arraignment" does not, standing alone, "deprive[] the accused of any substantial right, or in any wise change[] the course of the trial to his disadvantage." *Id*. at 645.  Thus, under *Garland* "[a] failure to arraign warrants a reversal only if it causes prejudice or impairs a substantial right." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998); *see also*, *Redwine v. Renico*, No. 01-CV-74802, 2002 WL 31245256, at *3 (E.D. Mich. Sept. 30, 2002) (Roberts, J.).   Reversal or habeas relief is available, therefore, only if "the accused has had insufficient 'notice of the accusation' and an inadequate 'opportunity to defend himself in the prosecution.'" *United States v. Boyd*, 792 F. Supp.

19

1083, 1099 (N.D. Ill. 1992) (quoting *Garland*, 232 U.S. at 645); *see also*, *United States v. Rogers*, 73 F.3d 774, 777 (8th Cir. 1996) ("Where a defendant has had sufficient notice of the charges against him and an adequate opportunity to defend himself at trial . . . an arraignment is not required."); *Redwine*, 2002 WL 31245256, at *3.

Here, petitioner does not argue that he did not have adequate notice of the charges against him or that he was denied an opportunity to defend himself at trial.  On the contrary, it is clear that the trial court informed petitioner of the four charges against him set forth in the amended information.  *See* Arraignment Tr., dated 6/11/99, at 4-6.  Thus, even if the arraignment was technically defective, petitioner cannot show that he was denied his constitutional right to due process of law so as to warrant habeas relief.  *See Redwine*, 2002 WL 31245256, at *3.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Jury Claims (Direct Appeal Claims IV & VI-VIII)*

Petitioner next raises a number of challenges relating to the jury.  The Court should conclude that petitioner is not entitled to habeas relief on any of these claims.

1.    *Defective Oath (Direct Appeal Claim IV)*

Petitioner first contends that he was denied a fair trial because the trial court gave a defective oath to the jury at the commencement of the case.  After the jury had been selected, the court clerk read the following oath to the panel:

> You do solemnly swear you will well and truly try and true deliverance make between the people of this state and the defendant at the bar, whom you shall have in your charge, according to the law and evidence of this state, so help you God.

Trial Tr., Day 1, at 48.  This oath was taken directly from MICH. COMP. LAWS § 768.14.  Petitioner contends that the jury should have been sworn pursuant to the oath set forth in MICH. CT. R.

20

2.511(G), which provides the following oath:

> Each of you do solemnly swear (or affirm) that, in this action now before the court,
> you will justly decide the questions submitted to you, that, unless you are discharged
> by the court from further deliberation, you will render a true verdict, and that you
> will render your verdict only on the evidence introduced and in accordance with the
> instructions of the court, so help you God.

MICH. CT. R. 2.511(G). The Michigan Court of Appeals rejected petitioner's claim, concluding that

even if the court rule and not the statute were controlling, "the oath that was given sufficiently

served to obtain a promise that jurors would abide by the law, pay attention to the evidence, and

conduct themselves appropriately." *Lott*, 2002 WL 31082165, at *2, slip op. at 3.

It is well established that habeas review does not lie for errors of state law. *See Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner has cited, and I have found, no cases requiring a

particular form of oath be sworn to by the jurors as a matter of federal constitutional law. On the

contrary, the swearing of the jury generally involves a matter of state law that is noncognizable in

federal habeas review. *See Mayo v. Lynaugh,* 882 F. 2d 134, 137 (5th Cir. 1989). Thus, even if the

oath was defective under Michigan law, petitioner is not entitled to habeas relief on this claim.

2. *Prejudicial Comments During Voir Dire (Direct Appeal Claim VII)*

Petitioner next claims that he was denied a fair trial due to prejudicial comments made by

several prospective jurors during *voir dire*. Juror No. 6, Debra Ammar, indicated that her ex-

husband had been extradited to the Netherlands and tried for murder, although he was acquitted.

After indicating that she did not think she could be fair in light of this experience, Juror No. 6 was

excused by the court. *See* Jury Trial Tr., Day 1, at 18-19. Juror No. 12, Ted Smolinski, indicated

that his uncle had been carjacked and murdered about seven years before the trial. He indicated that

he could nevertheless be fair at petitioner's trial. *See id*. at 20. Juror No. 12 was removed by

21

petitioner through a peremptory challenge. *See id.* at 44. Juror No. 4, Keena Brown, was robbed at gunpoint about a year before the trial. She stated that she could be fair despite this fact. *See id.* at 21. The replacement Juror No. 6, Lois Reynolds, indicated that she had her purse snatched, and that she could not be fair. She was excused for cause. *See id.* at 21-22. The replacement Juror No. 2, Bryon Smith, was robbed about 20 years prior to the trial. He indicated that he could nevertheless be fair and impartial. *See id.* at 41-42.

Petitioner does not contend that any juror's experience as the victim of a crime rendered any juror, or the jury as a whole, partial. Rather, he contends that the venire members' discussions of these crimes tainted the jury which was ultimately empaneled. The Michigan Court of Appeals rejected petitioner's claim, noting that "[t]he questioning of prospective jurors regarding their experiences as crime victims was necessary to determine whether they could serve fairly and impartially[.]" *Lott*, 2002 WL 31082165, at *3, slip op. at 4. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

The Sixth Amendment guarantees the right to a trial by an impartial jury. *See Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968). The constitutional standard of fairness requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. *See Morgan v. Illinois*, 504 U.S. 719, 726 (1992); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). A habeas court's review of a state court's determination of jury impartiality is highly deferential. *See Lucero v. Kirby*, 133 F.3d 1299, 1308 (10th Cir. 1998) (discussing *Mu'Min v. Virginia*, 500 U.S. 415, 422-28 (1991)); *Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996). Thus, "to establish a constitutional violation based on the trial court's refusal . . . to dismiss the venire panel, petitioner 'must demonstrate either that the

22

trial resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved "such a probability that prejudice will result that it is deemed inherently lacking in due process."'" *Lucero*, 133 F.3d at 1308 (quoting *Brecheen v. Reynolds*, 41 F.3d 1343, 1350 (10th Cir. 1994) (quoting *Estes v. Texas*, 381 U.S. 532, 542-43 (1965))); *cf. Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000)).

### b. Analysis

Here, "petitioner has not identified any actual prejudice on the part of any juror." *Lucero*, 133 F.3d at 1308. He does not identify any comments from the *voir dire*, or point to any other evidence in the record, that the jurors who ultimately sat on his jury were actually biased. Jurors in a criminal case, however, do not need to be "totally ignorant of the consequences of crime, nor free of opinion towards crime." *United States v. Tegzes,* 715 F. 2d 505, 507 (11th Cir. 1983). "While knowledge that criminal conduct sometimes leads to tragic results may create a bias towards crime, bias or prejudice towards crime does not disqualify one to sit as a juror in a criminal case so long as those feelings do not lead to a predisposition toward the prosecution or accused." *Id.*

Petitioner merely speculates that the jurors in this case were tainted by hearing that a number of the prospective jurors or their relatives or friends had been crime victims. Petitioner's claim that a juror's "mere awareness of the adverse consequences of crime" induced bias against him is highly speculative and falls far short of demonstrating actual prejudice. *See Tegzes,* 715 F. 2d at 508. Nothing in the nature of the prospective jurors' comments was inherently prejudicial. The prospective jurors merely stated that they or someone they knew had been the victim of various crimes; there was no elaboration or specific details given. Further, a review of the *voir dire* transcript indicates that all of the jurors who sat on petitioner's case stated that they could be fair

and impartial and would decide the case based solely on the evidence presented at trial. "Absent any reasons [beyond speculation] to suspect as untrue the juror's claims of ability to remain impartial despite exposure to improper . . . comment, the court should credit those responses." *United States v. Hernandez,* 84 F. 3d 931, 936 (7th Cir. 1996) (quoting *United States v. Moutry*, 46 F. 3d 598, 603 (7th Cir.1995)).

In these circumstances, "[t]he spectre of bias or prejudice must become considerably more tangible before it can overcome the general presumption in favor of jury impartiality." *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979) (no presumption of prejudice arose from presence in venire panel of a former DEA informant); *see also*, *United States v. Cantwell*, 41 Fed. Appx. 263, 269 (10th Cir. 2002) (no presumption of prejudice arose from comments of three jurors indicating that they were familiar with defendant's pyramid scheme; jurors' comments were brief and quickly terminated by the court and there was no evidence of actual bias on the part of the remaining jurors); *United States v. Shropshire*, 498 F.2d 137, 139 (6th Cir. 1974). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Instructional Error (Direct Appeal Claims VI and VIII)*

Petitioner next raises two claims of instructional error. First, he contends that the trial court denied him due process of law by failing to give a cautionary instruction to the jury on the grave dangers of eyewitness misidentification. Second, he contends that the trial court's instruction on reasonable doubt was defective. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

a.    *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions,

a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). Nonetheless, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

### b. Misidentification Instruction

At trial, the court gave a detailed instruction regarding the evaluation of a witness's credibility in general. *See* Jury Trial Tr., Day 2, at 33-34. The trial court also gave a more detailed identification instruction:

> One of the issues in this case is the identification of the defendant as the person who committed the crime. The prosecutor must prove, beyond a reasonable doubt, that the crime was committed and that the defendant was the person who committed it.
> In deciding how dependable an identification is, think about such things as how much of a chance the witness had to see the offender at the time; how long the witness was watching; whether the witness had seen or known the offender before; how far away the witness was; whether the area was well lighted; and the witness's state of mind at the time. Also think about circumstances at the time of the identification. Such as, how much time had passed since the crime; how sure the

25

witness was about the identification; and the witness' state of mind during the identification.

You may also consider any times that the witness failed to identify the defendant, or he made an identification or gave a description that did not agree with his identification of the defendant during the trial.

You should examine the witness' identification testimony carefully. You may consider whether other evidence supports the identification, because then it may be more reliable.

*Id.* at 40. Petitioner argues that the trial court should have given a more comprehensive instruction regarding the dangers of misidentification in light of the Michigan Supreme Court's decision in *People v. Anderson*, 389 Mich. 155, 205 N.W.2d 461 (1973), which took judicial notice of the dangers inherent in identification testimony. The Michigan Court of Appeals rejected this claim, concluding that the court's instruction "adequately appraised the jury of the proper considerations for evaluation eyewitness identifications." *Lott*, 2002 WL 31082165, at *3, slip op. at 3. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, a comprehensive instruction on the dangers of misidentification was not required as a constitutional matter. *See Carey v. Maryland*, 617 F. Supp. 1143, 1148-49 (D. Md. 1985), *aff'd*, 795 F.2d 1007 (4th Cir. 1986); *Jones v. Smith*, 599 F. Supp. 1292, 1304 (S.D. Ala. 1984), *aff'd*, 772 F.2d 668 (11th Cir. 1985). Second, petitioner cannot show that he was prejudiced by the absence of a more specific instruction. Counsel strenuously attacked the identification testimony during cross-examination and during closing argument. Further, the court instructed the jury on the numerous factors that it should consider in evaluating the identification testimony, and specifically instructed the jury that it "should examine the witness' identification testimony carefully." Jury Trial Tr., Day 2, at 40. In these circumstances, the failure to give a specific instruction on the dangers of misidentification did not deprive petitioner of a fair trial. *See Cotton v. Armontrout*, 784 F.2d 320, 322 (8th Cir. 1986); *Millender v. Adams*, 187 F. Supp. 2d 852, 879 (E.D. Mich. 2000)

26

(Rosen, J.).   And, in any event, petitioner has pointed to, and I have uncovered, no clearly established Supreme Court precedent, as required for relief to be warranted under § 2254(d)(1), which reasonably can be read as requiring such an instruction.  *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001) (petitioner not entitled to habeas relief on basis of trial court's failure to give requested instruction where petitioner pointed to no clearly established federal law requiring the giving of such an instruction); *Hanna v. Farmon*, No. 98-56002, 1999 WL 402388, at *2 (9th Cir. June 10, 1999) (same); *Slaughter v. Parker*, 187 F. Supp. 2d 755, 809 (W.D. Ky. 2001) (same); *Rodriguez v. Zavaras*, 42 F. Supp. 2d 1059, 1107 (D. Colo. 1999) (same).   Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  Reasonable Doubt Instruction

Petitioner also contends that the trial court's instruction on the definition of reasonable doubt was inadequate.  The court instructed the jury that

> [a] reasonable doubt is a fair, honest doubt, growing out of the evidence or lack of evidence.  It is not merely an imaginary or possible doubt, but a doubt that is based on reason and common sense.
> A reasonable doubt is just that; a doubt that is reasonable after a careful and considered examination of the facts and circumstances of this case.

Jury Trial Tr., Day 2, at 30.  Petitioner contends that this instruction was deficient because it failed to equate proof beyond a reasonable doubt with proof to a moral certainty, and because it failed to instruct the jury that a reasonable doubt is such a doubt as would cause a reasonable person to hesitate before acting on important matters in that person's own life.  The Michigan Court of Appeals rejected this claim, concluding that the trial court's instruction "sufficiently conveyed the concept of reasonable doubt to the jury." *Lott*, 2002 WL 31082165, at *3, slip op. at 4.  The Court should conclude that this determination was a reasonable application of clearly established federal

27

law.

As a general matter, the court's instruction accurately conveyed to the jury the standard of proof borne by the prosecution, and did not shift the burden to petitioner.     A number of courts have upheld similar instructions on habeas review.  *See, e.g.*, *Chalmers v. Mitchell*, 73 F.3d 1262, 1268 (2d Cir. 1996); *Murphy v. Holland*, 776 F.2d 470, 477-78 (4th Cir. 1985) (citing cases), *remanded for reconsideration on other grounds*, 475 U.S. 1138 (1986).  Further, there was no error in the court's definition of reasonable doubt as a doubt based on reason.  Although the definition was circular and of little help, it did not misstate the definition of "reasonable doubt," nor did it shift the burden of proof to defendant.  *See Murphy v. Holland*, 776 F.2d 470, 476 (4th Cir. 1985) ("An instruction that a reasonable doubt is 'a doubt for which a reason can be given' merely conveys what is already axiomatic from the plain meaning of those very words. . . .  While such a definition does nothing to advance the jury's understanding of reasonable doubt, it in no way undermines or destroys their common sense appreciation of that term's meaning."), *vacated on other grounds*, 475 U.S. 1138 (1986); *cf. United States v. Romero*, 32 F.3d 641, 651-52 (1st Cir. 1994).

Nor did the trial court err in failing to equate proof beyond a reasonable doubt with proof to a moral certainty.  Contrary to petitioner's assertion, instructing the jury that they must be convinced of a defendant's guilt to a "moral certainty" is not a constitutional requirement.  Indeed, although instructions containing such language may or may not be constitutional, *compare Victor v. Nebraska*, 511 U.S. 1, 21-22 (1994), *with Cage v. Louisiana*, 498 U.S. 39, 39-41 (1990) (per curiam), the Supreme Court has explicitly stated that it does "not condone the use of the phrase." *Victor*, 511 U.S. at 16; *see also*, *id*. at 22, and a number of courts have strongly cautioned against the use of such language.  *See, e.g.*, *Chalmers v. Mitchell*, 73 F.3d 1262, 1269-70 (2d Cir.), *cert.*

28

*denied*, 117 S. Ct. 106 (1996); *Smith v. Butler*, 696 F. Supp. 748, 753-54 (D. Mass. 1988), *aff'd*, 879 F.2d 853 (1st Cir. 1989); *see also*, *Victor*, 511 U.S. at 23 (Kennedy, J., concurring) ("I cannot understand, however, why such an unruly term should be used at all when jurors are asked to perform a task that can be of great difficulty when instructions are altogether clear."); *id*. at 24 (Ginsburg, J., concurring in part) ("I agree, further, with the Court's suggestion that the term 'moral certainty,' while not in itself so misleading as to render the instructions unconstitutional, should be avoided as an unhelpful way of explaining what reasonable doubt means."). Likewise, there is no requirement that a reasonable doubt instruction contain the "hesitate to act" language identified by petitioner. *See United States v. Taylor*, 997 F.2d 1551, 1556 (D.C. Cir. 1993).

As the Court explained in *Victor*:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.

*Victor*, 511 U.S. at 5 (citations omitted) (internal quotation omitted). Indeed, attempts to define reasonable doubt are so troublesome that at least two circuit courts "have admonished their District Judges not to attempt a definition." *Victor*, 511 U.S. at 25 (Ginsburg, J., concurring in part) (citing *United States v. Adkins*, 937 F.2d 947, 950 (4th Cir. 1991); *United States v. Hall*, 854 F.2d 1036, 1039 (7th Cir. 1988)). Here, the trial court's definition adequately conveyed to the jury that it could convict only if the prosecution had proved petitioner guilty beyond a reasonable doubt. The court's instruction also made it clear that the jury's decision had to be based on a careful examination of the evidence in the case. The instruction did not lower the government's burden of proof, nor suggest

29

to a reasonable jury that petitioner could be convicted based on a lower burden of proof. Accordingly, the Court should conclude that petitioner is not entitled to the writ of habeas corpus on this ground.

H.    *Rebuttal Testimony Claim (Direct Appeal Claim V)*

Petitioner next claims that he was denied a fair trial by the rebuttal testimony of the victim, Ali Kaddouh.  During the prosecution's case-in-chief, Kaddouh testified that petitioner was the person who robbed him, and that petitioner sat in the front passenger seat of the stolen car as the robbers left the scene.  *See* Trial Tr., Day 1, at 64-68, 72.  After the prosecution rested, petitioner testified on his own behalf that he did not participate in the robbery and carjacking, but merely had accepted a ride from a man he had recently met.  *See id.* at 120-23, 127-29.  The prosecution then recalled Kaddouh as a rebuttal witness, and Kaddouh reaffirmed this identification of petitioner as the man who robbed him:

> Q:    Mr. Kaddouh, we have heard some testimony here while you were sequestered, heard from Mr. Lott.  He says that he is not the one that robbed you.  Are you positive this is the man that stood in front of your truck, walked around to your side, ordered you out of the car, patted you down, face-to-face, stole your hundred fifty dollars, your cell phone, and your pager, and then sat in the right front pass [sic] seat of your friend's Chevy Blazer?
> A:    Yes, he was.
> Q:    If you had any doubts about it, would you tell us?
> A:    If I had any doubt, I would tell you, but I got no doubts.
> Q:    Are you sure?
> A:    One hundred percent sure.

*Id.* at 150.  The Michigan Court of Appeals rejected petitioner's claim that this testimony was improper, concluding that "given defendant's testimony denying his participation in the charged offense, it was not improper for the prosecutor to recall one of the victims to testify on rebuttal regarding defendant's identity as one of the perpetrators.  The testimony was properly responsive

30

to defendant's testimony." *Lott*, 2002 WL 31082165, at *1, slip op. at 2. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

    1.    *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v.*

*Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings."  *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.    *Analysis*

The trial court's ordering of the proofs in this case and the prosecution's presentation of Kaddouh's rebuttal testimony present issues of state evidentiary law subject to the above standards. *See Henderson v. Norris*, 118 F.3d 1283, 1286 (8th Cir. 1997); *White v. Withrow*, No. 00-74231, 2001 WL 902624, at *7 (E.D. Mich. June 22, 2001) (Rosen, J.); *Pickens v. Lockhart*, 802 F. Supp. 208, 217 (E.D. Ark. 1992).  Furthermore, "[a] trial court possesses particularly broad discretion to determine permissible areas of inquiry on rebuttal."  *Castro v. Sullivan*, 662 F. Supp. 745, 748 (S.D.N.Y. 1987); *see also*, *United States v. Askanazi*, 14 Fed. Appx. 538, 540 (6th Cir. 2001); *White*, 2001 WL 902624, at *7.

Here, petitioner cannot show that the trial court abused its discretion or that the admission of the evidence denied him a fair trial.  As the Michigan Court of Appeals held, the evidence was proper rebuttal evidence because it refuted petitioner's own testimony during the defense case-in-chief.  Further, petitioner knew of the witness, and was not unfairly surprised either by the existence of the witness or by the substance of his testimony.  Thus, it cannot be said that the admission of this evidence denied petitioner a fundamentally fair trial.

Further, even if the admission of the rebuttal testimony was erroneous, the error was harmless.  Trial error does not entitle a state prisoner to habeas relief unless the error "'had

substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Here, Kaddouh's testimony was cumulative of the testimony he had previously given during the prosecution's case-in-chief.  Because Kaddouh's rebuttal testimony offered nothing new that the jury had not already heard, any error in the admission of this testimony was harmless.  *See Hence v. Smith*, 37 F. Supp. 2d 970, 983 (E.D. Mich. 1999) (Gadola, J.).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.    *Ineffective Assistance of Counsel Claims (Supplemental Claim II, Habeas Claims I & II, and Amended Habeas Claim)*

Petitioner next contends that his trial and appellate counsel were ineffective in various respects.  Specifically, petitioner contends that trial counsel was ineffective for: (1) failing to object to various instances of prosecutorial misconduct; and (2) failing to challenge biased jurors.  He also contends that appellate counsel was ineffective for failing to raise his *pro se* appellate claims on appeal.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *See id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id*. at 697.  If

33

"it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.     *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to object to several of the instances of prosecutorial misconduct identified in his state court appeal and advanced in this habeas action. As explained above, however, each of these claims of prosecutorial misconduct is without merit, and counsel cannot be deemed ineffective for failing to raise these meritless claims. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).

Petitioner also contends that counsel was ineffective for failing to more fully question two prospective jurors regarding their biases. However, as explained above, *see supra* part G.2.b, petitioner has failed to establish that any jurors actually seated in his case were biased, nor has he explained how any additional questioning would have uncovered any supposed bias on the part of

34

these jurors beyond the fact that they had been victims of a crime.  Thus, petitioner cannot show that he was prejudiced by counsel's failure to ask additional *voir dire* questions.  *See Tinsley v. Million*, 399 F.3d 796, 805-06 (6th Cir. 2005); *Miller v. Francis*, 269 F.3d 609, 616-17 (6th Cir. 2001).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

       3.     *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise several of his habeas claims on direct appeal, specifically the claims that he raised in his *pro se* supplemental brief.  To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  As explained above, all of these claims are without merit, and the Michigan Court of Appeals actually considered and rejected the claims raised in the supplement brief.  Thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal.

J.     *Sentencing Claims (Direct Appeal Claim II and Supplemental Claim I)*

Finally, petitioner raises two challenges to his sentence.  First, he contends that his sentence was increased based on his exercise of his right to trial.  Second, he contends that his sentence was impermissibly based on uncounseled prior convictions.

       1.     *Vindictive Sentencing (Direct Appeal Claim II)*

Petitioner first contends that his sentence was increased in retaliation for his exercise of his right to trial.  Prior to trial, the trial judge gave petitioner a sentence evaluation pursuant to *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), which permits a defendant to plead guilty pursuant to the trial court's initial evaluation as to the appropriate sentence, subject to the

defendant's right to withdraw his plea if the actual sentence imposed is more severe. Prior to trial, the trial court indicated that, pursuant to its *Cobbs* evaluation it would sentence petitioner to a minimum term of four to five years' imprisonment if petitioner accepted the prosecutor's plea offer. *See* Jury Trial Tr., Day 1, at 3-4. At sentencing, petitioner's counsel asked the trial judge to impose the *Cobbs* sentence, but the judge declined to do so, explaining:

> Mr. Lott, first of all, I have to say the Cobbs evaluation was taken on the information and the request of your attorney, who did an outstanding job of representing you.
> However, at trial the court did get to hear many more facts about circumstances of this case, including your age, and your part in this offense, you having had all of the money taken during the offense, and all the other facts.
> A jury convicted you of car-jacking and three counts of armed robbery, and it is not up to this court to nullify their conviction.

Sentence Tr., at 10.

Petitioner contends that his actual sentence, the minimum of which was three times the *Cobbs* evaluation, punished him for exercising his right to a trial by jury. He claims, therefore, that the sentence violates his due process rights. The Michigan Court of Appeals rejected this claim, noting that the Michigan Supreme Court's decision in *Cobbs* expressly stated that a *Cobbs* evaluation does not bind a trial court's discretion in imposing sentence after trial. *See Lott*, 2002 WL 31082165, at *2, slip op. at 2-3. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

It is well-established that "[a]n accused may not be subjected to more severe punishment for exercising his constitutional right to stand trial [or appeal]." *United States v. Carter*, 804 F.2d 508, 513 (9th Cir. 1986); *accord Waring v. Delo*, 7 F.3d 753, 758 (9th Cir. 1993). Where a harsher sentence is imposed following a successful appeal, the sentence is presumed to be vindictive and

36

the record must affirmatively demonstrate that the sentence was not imposed for an impermissible

reason. *See North Carolina v. Pearce*, 395 U.S. 711, 724 (1969). Where, however, the sentence

imposed after trial is more harsh than one imposed in conjunction with an earlier plea agreement

(or as here one in a proposed plea agreement), no such presumption arises. *See Alabama v. Smith*,

490 U.S. 794, 799 (1989). Accordingly, petitioner "bears the burden of proving that actual

judicial vindictiveness motivated the . . . sentence [s]he received after trial." *Waring*, 7 F.3d at

758; *see also*, *Pabon v. Hake*, 763 F. Supp. 1189, 1194 (E.D.N.Y. 1991).

### b.  Analysis

Here, the record does not support a finding of vindictiveness, and petitioner has presented

no additional evidence to suggest otherwise. Petitioner points to no evidence of vindictiveness

apart from the fact that the sentence imposed was greater than the initial *Cobbs* evaluation. As

*Smith* makes clear, however, this alone is insufficient to establish that the trial court's sentence

was imposed in retaliation for petitioner's exercise of his right to a jury trial. Further, the trial

judge expressly stated that petitioner's sentence after conviction was based on the record that had

been developed, as opposed to the cursory review of the crime that led to the *Cobbs* evaluation.

As the First Circuit has explained in substantially similar circumstances:

> [T]he mere fact that the post-verdict sentence exceeds the 'plea bargain' sentence
> . . is insufficient, in and of itself, to indicate a reasonable likelihood of
> vindictiveness. For one thing, unlike a verdict of guilty, an admission of guilt
> properly warrants the sentencing court's consideration of a more lenient sentence
> than might otherwise be imposed in an appropriate response to the defendant's
> criminal conduct. *See Smith*, 490 U.S. at 802. Thus, the . . . sentence proffered to
> [petitioner] during the plea bargaining process does not reflect a true assessment
> of [petitioner]'s criminal culpability, in that it plainly included a substantial
> discount for leniency.
>
> As for the remaining aspect of the differential, normally the sentencing
> court imposes a post-verdict sentence after considering the evidence presented at
> trial. In contrast, a plea-bargained sentence normally is predicated upon a more

37

> rudimentary record of the alleged criminal conduct, such as the description in the
> indictment, and/or a presentence report. *See id*. at 801.  Indeed, the sentencing
> judge in this case adverted to this very consideration in sentencing [petitioner].

*Correia v. Hall*, 364 F.3d 385, 388-89 (1st Cir. 2004) (parallel citations omitted); *see also*,

*Williams v. Jones*, 231 F. Supp. 2d 586, 598-99 (E.D. Mich. 2002) (Lawson, J.).  Further, in

sentencing petitioner the "judge made no comment whatsoever which might even remotely imply

that he intended to impose a harsher sentence in the event [petitioner] did not accept" the *Cobbs*

agreement.  *Correia*, 364 F.3d at 391.

In short, the record contains nothing to give rise to a presumption of vindictiveness and

beyond the fact of a harsher sentence–which alone is insufficient–"petitioner offered no evidence

of actual vindictiveness."  *Williams*, 231 F. Supp. 2d at 599.  Accordingly, the Court should

conclude that petitioner is not entitled to habeas relief on this claim.

2.     *Reliance on Uncounseled Convictions (Supplemental Claim I)*

Petitioner next contends that his sentence is unconstitutional because, in imposing sentence,

the trial court relied on prior convictions where petitioner was not represented by counsel.  Petitioner

contends that his sentence was based in part on prior criminal convictions in Mississippi and

Minnesota, and that he was not assisted by counsel in those cases, which resulted in guilty pleas.

The Michigan Court of Appeals rejected this claim, concluding that petitioner had failed to

demonstrate that either the Mississippi or Minnesota conviction was invalid.  *See Lott*, 2002 WL

31082165, at *4, slip op. at 4-5.  The Court should conclude that petitioner is not entitled to habeas

relief on this ground.

a.  *Clearly Established Law*

In *Townsend v. Burke*, 334 U.S. 736 (1948), the Supreme Court held that it violates a

criminal defendant's right to due process to sentence the defendant "on the basis of assumptions concerning his criminal record which were materially untrue." *Id.* at 741.  In *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Court held that the Sixth Amendment right to counsel makes it "unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one." *Burgett v. Texas*, 389 U.S. 109, 114 (1967).  In *Burgett* the Court extended its holding in *Gideon*, concluding that a conviction obtained in violation of *Gideon* cannot be used to either support guilt or enhance punishment for another, subsequent offense. *See Burgett*, 389 U.S. at 115. Extrapolating from both *Townsend* and *Gideon/Burgett*, the Court held in *United States v. Tucker*, 404 U.S. 443 (1972), that a sentencing court's reliance on convictions which are "wholly unconstitutional under *Gideon*" results in a "sentence founded at least in part upon misinformation of a constitutional magnitude" of the type prohibited by *Townsend*. *Tucker*, 404 U.S. at 447.  Thus, "[w]hen an otherwise qualified § 2254 petitioner can demonstrate that his current sentence was enhanced on the basis of a prior conviction that was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, the current sentence cannot stand and habeas relief is appropriate." *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 404 (2001).

*b.  Analysis*

Petitioner contends that the trial court erred in relying on two prior convictions for which he did not have the assistance of counsel, one from Mississippi and one from Minnesota.  The Presentence Investigation Report (PSIR) identifies one prior felony conviction and six prior misdemeanor convictions. *See* PSIR, at 3-5.  Specifically, the PSIR lists the following convictions:

- 1998 convictions in the 12th District Court of Mississippi for (a) misdemeanor use of a controlled substance and (b) resisting and obstructing an officer; sentenced to 365 days in jail.

- a 1998 conviction in the 12th District Court of Mississippi for misdemeanor unlawful use of a license plate/registration/title; sentenced to 90 days confinement.

- a 1997 conviction in the 12th District Court of Mississippi for misdemeanor possession of marijuana; sentenced to 30 days confinement.

- a 1996 conviction in the Hennenpin County Superior Court of Minnesota for fourth degree possession of drugs; sentenced to 45 days incarceration and three years probation.

- a 1996 conviction in the Dearborn, Michigan, District Court for resisting an officer serving process; sentenced to 30 days confinement.

For each of the convictions listed in the PSIR, except for the Minnesota conviction, the PSIR indicates that an attorney was present. The PSIR indicates that it is "unknown" whether an attorney was present for the Minnesota conviction. Petitioner contends that he did not have counsel at the plea for his Minnesota conviction. Petitioner also contends that he did not have counsel for a separate Mississippi conviction which is not set forth in the PSIR, but which was discussed at sentencing. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

As to the Minnesota conviction, the docket sheet provided to petitioner by the Minnesota court (attached as Exhibit B to petitioner's motion to remand in the state court) clearly indicates that petitioner was represented by attorney Barbara Isaacman. It is petitioner's burden to show both that he was without counsel at the time of his plea in the Minnesota case, and that the presence of counsel was not validly waived. *See Hobson v. Robinson*, 27 Fed. Appx. 443, 445 (6th Cir. 2001) (citing *Parke v. Raley*, 506 U.S. 20, 28-34 (1992)). In light of the Minnesota transcript, petitioner's "conclusory allegation is not a basis for granting an evidentiary hearing" or habeas relief. *Brown v. Tyszkiewicz*, No. 99-CV-73027, 2000 WL 1480892, at *8 (E.D. Mich. Aug. 31, 2000) (Borman, J.); *see also*, *Hobson*, 27 Fed. Appx. at 445; *United States v. Joost*, 92 F.3d 7, 14 (1st Cir. 1996).

As to the Mississippi conviction, petitioner is not entitled to relief because he cannot show

40

that his sentence was based in any part on this conviction.  It is well established that a *Tucker* violation arises only where a prior uncounseled conviction "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985).  "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447).  As petitioner concedes, the Mississippi conviction was not included in the PSIR, and thus could not have affected the computation of the sentencing guidelines.  The only mention of the conviction is a passing reference by the prosecuting attorney.  *See* Sentence Tr., at 3.  Although the prosecutor argued that the court should sentence petitioner in the middle of the guidelines range based on his criminal history in general, the prosecutor did not again specifically the Mississippi conviction which petitioner challenges.  *See id.* at 7.  The court's selection of a sentence within the guideline range appears to have been based primarily, if not solely, on the circumstances of the crime, rather than on petitioner's criminal history.  *See id.* at 10-11.  There is certainly nothing in the record to suggest that the judge selected a sentence within the guidelines range based on this single conviction which was not included in the PSIR and which was only briefly mentioned by the prosecutor.  Petitioner thus has failed to show that his sentence was based, in any part, on the allegedly invalid Mississippi conviction.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives                                    
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 6/30/05

| |
|---|
| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 30, 2005.<br><br>s/Eddrey Butts<br>Case Manager |